IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOMINIC DeBELLIS,

     Plaintiff,

v.

JOSEPH WOODIT, ET AL.,

     Defendant.

Civil No. 23-1009-BAH

## MEMORANDUM OPINION

This dispute concerns the sale of a thoroughbred horse named Hip927, otherwise known as King Joey.[1] Plaintiff Dominic DeBellis alleges that the Defendants sold Hip927 to Joseph Woodit ("Woodit") in Spring 2022 without Plaintiff's consent or authorization. ECF 1 (Complaint) ⁋ 51.[2] Plaintiff requests the immediate return of Hip927[3] and compensation of

---

[1] Hip927 is now named "King Joey." ECF 1 ⁋ 19; ECF 12-1, at 2. The Court will, nevertheless, refer to the horse as "Hip927" throughout this opinion because Plaintiff is contesting the validity of the transaction that permitted the ownership transfer that was a pre-requisite to the horse's renaming.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[3] In Plaintiff's request for relief, he seeks a judgment ordering Woodit to return "three (3) specific thoroughbred horses[,]" ECF 1, at 16; however, the Complaint only identifies one horse, Hip927, as the subject of this action. *See generally* ECF 1. The Court, therefore, construes Plaintiff's request for relief to be solely for the return of Hip927. If there are additional horses that are subject to this action, Plaintiff is granted fourteen (14) days leave to amend.

$180,000, *id.* ⁋ 115, based on the alleged conversion (Count I), fraud (Count II), theft (Count III), and conspiracy (Count IV) that occurred in connection to the sale of this horse. *Id.* at 10–16.[4]

For background purposes, the Court will briefly introduce a few key players and alleged facts. First, Defendant Ocala Breeder's Sales Company, Inc. ("OBS") allegedly facilitated the sale of Hip927 to Woodit. *Id.* ⁋ 34. Defendant Fabian Garcia ("Garcia") allegedly entered Hip927 into OBS's Spring 2022 auction. *Id.* ⁋ 36. After the auction did not produce a buyer, Garcia allegedly sold Hip927 without Plaintiff's authorization via a private sale on OBS's property.[5] *Id.* ⁋ 57. Garcia sold Hip927 to Defendant Seymour Bennett, who purchased the horse as an agent of Defendant Joseph Woodit. *Id.* ⁋ 55. Woodit transported Hip927 to Maryland, and Hip927, as of the filing of the Complaint, was stabled at the Laurel Park Racetrack in Anne Arundel County. *Id.* ⁋ 19. Lastly, Plaintiff is also suing between one and five (1–5) John Doe Defendants who train Hip927 in Maryland. *Id.* ⁋ 6.

Before the Court is Defendant Woodit's motion to dismiss all counts against him, ECF 12. Woodit's motion is accompanied by a memorandum of law. ECF 12-1. The Court has reviewed all relevant filings, including Plaintiff's response in opposition, ECF 15, and Woodit's reply, ECF

---

[4] The dispute is before the Court based on diversity jurisdiction. *See* ECF 1 (Complaint) ⁋⁋ 1–20 (indicating Plaintiff is a citizen of California, no Defendants are citizens of California, and the amount in controversy exceeds $75,000). Venue is proper as Maryland is the last known location of Hip927, the subject of this action. ECF 1 ⁋ 21; 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which . . . a substantial part of the property that is subject of the action is situated. . . .").

[5] Based on Plaintiff's complaint and response in opposition to Woodit's motion to dismiss, Plaintiff appears to allege that Hip927 was entered into the Spring 2022 auction, failed to sell during auction, and subsequently Garcia sold Hip927 to Woodit's agent via a "private" sale. ECF 1 ⁋ 57; ECF 15, at 2 (alleging Hip927 "did not sell during the auction" and instead while still on OBS property, Garcia sold Hip927 to Woodit's agent).

19. The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Woodit's motion to dismiss is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

Hip927 is a male thoroughbred horse with a well-esteemed lineage.[6]  Plaintiff estimates Hip927's monetary value is $105,000. ECF 1 ⁋ 71. Hip927 was born to the mare Queen of Denial on February 29, 2020.  ECF 15, at 1.  Hip927 was registered with the Jockey Club, and a registration certificate was issued to Plaintiff. ECF 1 ⁋⁋ 63–65 (referring to the certificate as "foal papers"). In October 2022, DeBellis turned Hip927 over to Garcia, an independent contractor, to prepare the horse to be entered in an auction hosted by OBS. *Id.* ⁋ 23.  OBS allegedly allowed Garcia to enter Hip927 into the auction on April 22, 2022, under Garcia's name with knowledge that Hip927 was actually owned by DeBellis. *Id.* ⁋⁋ 31, 94. Plaintiff alleges that Garcia thereafter privately sold Hip927 to Seymour Bennett, who was acting as an agent for Woodit. ECF ⁋⁋ 51, 55.

Upon learning of the sale, Plaintiff immediately contacted the Defendants and indicated the sale was void for fraud and demanded the return of Hip927. *Id.* ⁋⁋ 58–59.  Plaintiff also allegedly demanded that OBS not permit Hip927's foal papers, which Plaintiff describes as "recognized certificates of ownership of a particular identified horse," *id.* ⁋ 63, to be transferred or released to Woodit, *id.* ⁋ 65. On or about April 29, 2022, OBS nevertheless transferred the foal papers to Woodit. *Id.* ⁋ 66.  Plaintiff demanded the return of Hip927 and its foal papers, but Defendants

---

[6] Hip927's lineage is relevant to the determination of the monetary value of Hip927. *See* ECF 1 ⁋ 70. The dam, or mother, of Hip927, is "Queen of Denial." *Id.* ⁋ 68. Queen of Denial's sire, and Hip927's paternal grandfather was "Pioneer of the Nile." *Id.* Hip 927's paternal uncle, "American Pharoah," is a triple-crown winner. *Id.* Hip927's sire is "Outwork," a "Grade I Winner with purse winnings of approximately $701,800.00." *Id.* ⁋ 69.

failed to comply with this request. *Id.* ¶ 81. Plaintiff has refused to receive payment in connection with the allegedly fraudulent sale. *Id.* ¶ 60.

## II.    LEGAL STANDARD

### A. Rule 12(b)(6)

Under Rule 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570).

## III.    DISCUSSION

A federal court sitting in diversity applies the substantive law of the state in which it sits. *Megaro v. McCullum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023) (citing *Volvo Const. Equip. N. Am.,*

*Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004)). Accordingly, the Court applies Maryland's substantive law in considering Woodit's present motion.[7]

### A. Conversion

Woodit moves for Count I (Conversion) to be dismissed. ECF 12-1, at 3. In Maryland, "'conversion' is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999) (quoting *Interstate Ins. Co. v. Logan*, 109 A.2d 904, 907 (Md. 1954)).

"Conversion is an intentional tort, consisting of two elements, [1] a physical act combined with [2] a certain state of mind." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004). "The physical act can be summarized as 'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Id.* (quoting *Allied Inv. Corp.*, 731 A.2d at 963). "This act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor permits." *Id.* Stated differently, "the gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled." *Wallace v. Lechman & Johnson, Inc.*, 732 A.2d 868, 874 (Md.

---

[7] It is unclear why the parties cite to Florida law throughout their papers. *See* ECFs 12-1, 15, 19. The parties have not, for example, identified a choice of law clause in the bill of sale that could support this Court applying Florida law. *See generally* ECFs 12-1, 15, 19; *see, e.g., Bresler v. Wilmington Tr. Co.*, 348 F. Supp. 3d 473, 488 n.10 (D. Md. 2018) ("In the Fourth Circuit, courts may apply [contractual] choice of law provisions that are 'sufficiently broad to encompass contract-related tort claims,' . . . to non-contract claims." (quoting *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999))); *Felichko v. Schechter*, Civ. No. RDB-18-1392, 2019 WL 1318109, at \*9 (D. Md. Mar. 22, 2019) (declining to apply a contractual choice-of-law provision to the torts of fraud and negligent misrepresentation where the contract was not clearly broad enough to encompass the torts); *Aegis Bus. Credit, LLC v. Brigade Holdings, Inc.*, Civ. No. 21-00668-AAQ, 2023 WL 5352407, at \*3 (D. Md. Aug. 18, 2023) (collecting cases).

1999); *see also Basba v. Liu Xuejie*, Civ. No. 19-380-PX, 2021 WL 242495, at *5 (D. Md. Jan. 25, 2021) (applying Maryland common law of conversion).

As to the second element of the tort of conversion, "a wide range of different states of mind qualify." *Darcars Motors of Silver Spring, Inc.*, 841 A.2d at 836. "At a minimum, a defendant liable of conversion must have 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Id.* (quoting *Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 208 (Md. 1985); *Basba*, 2021 WL 242495, at *5 ("A plaintiff must demonstrate that the defendant intended to exercise control over the property at issue in a manner 'inconsistent with the plaintiff's rights.'" (quoting *Wallace*, 732 A.2d at 874)).

Importantly, "[t]he defendant may have the requisite intent even though he or she acted in good faith and lacked any consciousness of wrongdoing, as long as there was an intent to exert control over the property." *Darcars Motors of Silver Spring, Inc.*, 841 A.2d at 836; *see also Lilly v. Balt. Police Dep't*, Civ. No. RDB-22-2752, 2023 WL 6216605, at *16 (D. Md. Sept. 25, 2023) (quoting the same). As an example of this principle, the Supreme Court of Maryland has explained that even "[a] purchaser of stolen goods or an auctioneer who sells them in the utmost good faith becomes a converter, since the auctioneer's acts are an interference with the control of the property." *Darcars Motors of Silver Spring, Inc.*, 841 A.2d at 836 (quoting *Keys*, 494 A.2d at 208). However, in these circumstances, punitive damages are not appropriate. *Id.* (citing *K & K Mgmt. v. Lee*, 557 A.2d 965, 983–85 (Md. 1989), which held that, although the defendant was liable for conversion, punitive damages were unjustified because of an absence of actual malice); *Food Fair Stores, Inc. v. Hevey*, 338 A.2d 43, 47 (Md. 1975) (reversing an award for punitive damages where the defendant believed that it was entitled to the converted property and, therefore, committed the conversion without any evil or bad intention); *Siegman v. Equitable Tr. Co.*, 297

6

A.2d 758, 761 (Md. 1972) (holding the plaintiff was not entitled to punitive damages because the conversion occurred as a result of the defendant's mistake of law, not due to evil motive).

The parties dispute only whether Plaintiff's complaint alleges the requisite state of mind necessary for a conversion claim. *See* ECF 12-1, at 3; ECF 15, at 6. Woodit faults Plaintiff for not providing "any particular[8] knowledge known or imputed to Defendant Woodit []or intent on the part of Defendant Woodit." ECF 12-1, at 3. Plaintiff cites to large portions of his Complaint to support that he plead the state of mind element sufficiently, *see* ECF 15, at 6–7 (citing ECF 1 ¶¶ 74–82). These portions unquestionably plead that Woodit actually exercised physical dominion and control over Hip927 and its related foal papers. ECF 1 ¶ 77. While the cited portions of the complaint do not allege a particular state of mind (*e.g.*, malice, negligence, etc.), these portions of the Complaint do support the claim that Woodit *intended* to exercise dominion or control over Hip927 and its foal papers despite Plaintiff's claim that both horse and papers rightfully belonged to him. *See* ECF 1 ¶¶ 74–82; ECF 1 ¶ 81 (establishing Woodit's dominion over Hip927 by alleging "[t]he Defendants failed or refused to surrender and/or return Plaintiff's aforementioned thoroughbred horse and its related foal papers upon Plaintiff's demand and/or request," thereby pleading the required state of mind); *Darcars Motors of Silver Spring, Inc.*, 841 A.2d at 836 (holding that "[a]t a minimum" plaintiff need only prove the defendant had "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights"); *Basba*, 2021 WL 242495, at *5. This is true even if the purchaser believed he had a genuine right

---

[8] It is unclear whether Woodit is asserting that Plaintiff needs to plead his conversion claim with particularity under Federal Rule of Civil Procedure 9(b). Woodit clearly invokes such a standard in addressing the fraud claim, ECF 12-1, at 5. As Woodit does not clearly invoke this standard under Count I, the Court applies Federal Rule of Civil Procedure 8 to the conversion count. Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief").

to the property. *See Darcars Motors of Silver Spring, Inc.*, 841 A.2d at 836. The fact that Plaintiff's request for the return of Hip927 was rejected by Woodit permits the inference that Woodit intended to exercise dominion or control over the horse. *See* ECF 1 ⁋ 78; *see also Washington*, 58 F.4th at 177 (requiring courts on a motion to dismiss to "draw all reasonable inferences in favor of the plaintiff").

What ultimately needs to be determined in this case is whether "in fact" Woodit's exercise of dominion or control was "inconsistent with the plaintiff's rights." *Darcars Motors of Silver Spring, Inc.*, 841 A.2d at 836. Woodit essentially argues his exercise of dominion was not inconsistent with the plaintiff's rights because, as an "innocent purchaser,"[9] Woodit had a superior claim to the horse. ECF 12-1, at 4; *see also Wash. Mut. Bank v. Homan*, 974 A.2d 376, 384 (Md. App. 2009) ("It is a well-settled principle that one who purchases real property *without notice* of prior equities is protected as a *bona fide* purchaser for value." (first emphasis added) (internal citation and quotation marks omitted)); *see also* Md. Code Ann. Com. Law § 2-403(1) ("A purchaser of goods acquires all title which his transferor had or had power to transfer. . . . A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power . . . ."). Plaintiff counters that Woodit is not an "innocent purchaser" since all Defendants, including Woodit, failed to act in good faith with respect to the purchase and, regardless, argues that whether Woodit, through Bennett, innocently purchased Hip927 is a question of fact. ECF 15, at 12.

---

[9] The terms "bona fide purchaser" and "innocent purchaser" have occasionally been "used interchangeably in Maryland cases." *Wash. Mut. Bank v. Homan*, 974 A.2d 376, 390 n.12 (Md. App. 2009) (collecting cases).

8

The merit of Woodit's innocent purchaser defense cannot be determined on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense[.]"); *Chisholm v. Mountaire Farms of N.C. Corp.*, 629 F. Supp. 3d 368, 373 (M.D.N.C. 2022); *In re Minh Vu Hoang*, Civ. No. DKC 12-0593, 2014 WL 937949, at *9 (D. Md. Mar. 10, 2014). Specifically, the face of the Complaint does not reflect when Woodit was "on notice" of Plaintiff's ownership interest or when that ownership interest would transfer to a purchaser in a valid sale (*e.g.*, upon delivery of the horse, upon delivery of the foal papers, upon the sale and exchange of monies, etc.). Without such information the Court cannot determine the merit of Woodit's affirmative defense and dismissal is not appropriate.

Viewing the facts in a light most favorable to Plaintiff, Plaintiff has alleged an ownership interest in Hip927. ECF 1 ¶¶ 63–64 (stating Plaintiff is the identified owner on Hip927's foal papers, which are certificates of ownership). Plaintiff alleged that he did not consent to Garcia selling Hip927 in the private sale to Woodit, via his agent Bennett. *Id.* ¶ 52. Additionally, Plaintiff claims he gave notice of the allegedly fraudulent sale to all Defendants "immediately" upon learning of the sale. ECF 1 ¶ 58. Plaintiff demanded the return of Hip927 and refused any payment from the sale. *Id.* ¶¶ 59–60. These allegations are sufficient to support a plausible claim by alleging Woodit's physical act of exerting dominion or control and that Woodit intended to exercise dominion or control. Woodit's motion to dismiss Count I is **DENIED**.

### B. Count II: Fraud

Woodit moves for Count II (fraud) to be dismissed because Plaintiff's allegations of fraud are not stated with particularity. ECF 12-1, at 5. Rule 9(b) states: "In alleging fraud or mistake, a

party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A plaintiff alleging claims that sound in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Neal v. Pentagon Fed. Credit Union*, Civ. No. ELH-18-451, 2018 WL 5786119, at *5 (D. Md. Nov. 5, 2018) (quoting *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)).

"Under Maryland common law, '[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Bochenski v. M & T Bank*, Civ. No. ELH-14-1031, 2015 WL 1040281, at *19 (D. Md. Mar. 10, 2015) (quoting *Sass v. Andrew*, 832 A.2d 247, 261 (Md. App. 2003)). In an action for fraudulent misrepresentation, the plaintiff ordinarily must show:

> 1) that the defendant made a false representation to the plaintiff;
> 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;
> 3) that the misrepresentation was made for the purpose of defrauding the plaintiff;
> 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and
> 5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Id.* (quoting *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994)).

Woodit argues that Plaintiff has failed to plead any of the above elements. ECF 12-1, at 5–6. The Court agrees. Plaintiff's complaint essentially alleges only that Woodit purchased a horse in Florida and took the horse to Maryland. *See* ECF 1 ¶¶ 13–15, 51. This fails to meet the requirements for pleading fraud.

10

Plaintiff's unsupported legal conclusion that he has sufficiently alleged fraud "by misrepresentation and by conduct," ECF 15, at 9–10 (citing ECF 1 ¶¶ 87–101), is unavailing. *See id.* (citing no legal authorities or factual bases in the complaint). Having reviewed the sections of Plaintiff's complaint referred to in Plaintiff's response, the Court agrees with Woodit that Plaintiff has not pleaded that Woodit made any misrepresentation to Plaintiff, much less the time, place, and contents of any alleged misrepresentations. This Count is dismissed against Woodit without prejudice. Plaintiff's request for leave to amend, ECF 15, at 11, is granted and Plaintiff has fourteen (14) days to amend his Complaint as to Count II.

### C. Count III: Theft

Woodit moves for Count III (theft) to be dismissed because theft is a criminal act, and not cognizable as a civil claim. *See* ECF 12-1, at 7. Indeed, Plaintiff cites § 7-104 of the Criminal Law Article of the Maryland Annotated Code. ECF 15, at 8–9 (omitting a citation to the Maryland Criminal Law Article, despite quoting directly from it); Md. Code. Ann. Crim. Law § 7-104 (outlining general theft provisions). Plaintiff appears to acknowledge that Crim. Law § 7-104 only permits restitution through a criminal proceeding but seeks to assert a cognizable civil claim for theft utilizing Florida law. ECF 15, at 9. As explained above, the Court sitting in diversity applies the law of the state in which it sits. *See*, *supra*, note 7; *Megaro*, 66 F.4th at 159 n.4. As such, Count III is **DISMISSED** with prejudice as it has no arguable basis in Maryland law and thus is not a cognizable claim. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 556 (D. Md. 2013) (noting dismissal of a claim with prejudice is permissible where "further amendment would be futile, where the deficiencies in the complaint are fundamental . . . ."); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (indicating the same).

**D. Count IV: Conspiracy**

Civil conspiracy is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 269 A.2d 815, 824 (Md. 1970)).

Woodit moves for dismissal of Count IV[10] because Woodit alleges Plaintiff's Complaint is factually insufficient and amounts to no more than a recitation of the elements of a conspiracy claim. ECF 12-1, at 10.  The Court agrees.

Plaintiff alleges that the "defendants engaged in a common scheme to sell Plaintiff's aforesaid race horse to defendant Joseph Woodit." ECF 1 ¶ 111. Additionally, Plaintiff alleges the "wrongful sale of Plaintiff's aforesaid thoroughbred race horse to the defendant, Joseph Woodit was an act in furtherance of defendant's illegal and improper agreement." *Id.* ¶ 114. Plaintiff does not allege an agreement or meeting of the minds between Woodit and the other Defendants beyond mere conclusions that they engaged in a "common scheme." *Id.* ¶ 1. Nor are there facts, such as

---

[10] Woodit also argues that conspiracy is not cognizable as an independent tort in Maryland. ECF 12-1, at 8.  The Supreme Court of Maryland has consistently held that "'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995) (quoting *Alexander v. Evander*, 650 A.2d 260, 265 n.8 (Md. 1994)); *see, e.g., Bochenski v. M & T Bank*, Civ. No. ELH-14-1031, 2015 WL 1040281, at *22 (D. Md. Mar. 10, 2015) ("[A] court should not entertain a claim for civil conspiracy to commit fraud unless the plaintiff has sufficiently alleged an underlying fraud."). Plaintiff's Count IV incorporated the prior paragraphs of the Complaint. ECF 1 ¶ 109. The Court previously determined that Plaintiff stated a plausible conversion claim. *See supra* Section III.A. Thus, the "conspiracy" claim survives the challenge that it is not a cognizable tort because conversion can serve as the underlying tort supporting a conspiracy claim. *See Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) ("[T]his Court has already determined that the petitioner's tort claims were sufficiently pled. Therefore, the petitioner has alleged a tortious act upon which the conspiracy claim could be based.").

allegations of Woodit's state of mind at the time of the sale, that would support a reasonable inference that Woodit was an active and knowing participant in such a scheme. *See supra* Section III.A. (noting Plaintiff does not allege Woodit's state of mind). The Complaint currently does not offer "more than labels and conclusions." *Twombly*, 550 U.S. at 555. For this reason, Plaintiff's Count IV is dismissed without prejudice.

## I.   **CONCLUSION**

In sum, the Court **GRANTS in part** and **DENIES in part** Woodit's motion to dismiss. Woodit's motion to dismiss Count I is denied. Woodit's motion to dismiss Counts II, III, and IV is granted.   Counts II and IV are dismissed without prejudice and Count III is dismissed with prejudice.   Plaintiff has **fourteen (14)** days leave to amend his Complaint.

Dated: <u>March 14, 2024</u>                                                                 /s/

                                                                 Brendan A. Hurson
                                                                 United States District Judge

13