## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>DOMINIC DeBELLIS,</td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td>Civil No. 23-1009-BAH</td></tr>
<tr><td>JOSEPH WOODIT ET AL.,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This dispute concerns the sale of a thoroughbred horse named Hip927, otherwise known as King Joey. Plaintiff Dominic DeBellis alleges Defendants engaged in an unauthorized sale of DeBellis' horse in Spring 2022 after the horse failed to sell at an auction. *See* ECF 41 ¶¶ 31–32. DeBellis seeks the return of the horse as well as compensation, *id.* at 11, 16, 21, based on the alleged conversion (Count I), fraud (Count II), and conspiracy (Count IV) in connection with the sale of Hip927.[1]  *Id.* at 10–16. The Defendants include: (1) Fabian Garcia, who acted as DeBellis' representative in the auction, *id.* ¶ 30, (2) Joseph Woodit, the eventual private purchaser of the horse, *id.* ¶ 51; (3) Seymour Bennett, the agent of Woodit in the private sale, *id.* ¶ 55; and (4) between one and five (1–5) John Doe Defendants who trained Hip927 after the horse was sold to Woodit and transported to Maryland. *Id.* ¶ 6.[2]

---

[1] DeBellis refers to Count IV (Conspiracy) as Count IV in the Amended Complaint despite Count III's prior dismissal. *See* ECF 41, at 17. The Court will as well, to avoid confusion.

[2] DeBellis also sued Ocala Breeder's Sales Company, Inc. ("OBS") the company that facilitated the auction. OBS was dismissed as a party due to a lack of personal jurisdiction. *See* ECF 48 (memorandum opinion); ECF 49 (accompanying implementing order).

Before the Court is DeBellis' Motion for Transfer of Venue to the United States District Court for the Middle District of Florida (the "Motion"), ECF 61.   DeBellis' Motion is accompanied by a memorandum of law and exhibits.[3]   ECF 61.   The Court has reviewed all relevant filings, including Woodit's Response at ECF 62 and Garcia's Response at ECF 64, as well as DeBellis' Reply, ECF 63.   The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023).   For the reasons that follow, DeBellis' Motion is **GRANTED**.

## I.   BACKGROUND

The facts of this case have been outlined in prior memoranda of the Court. *See* ECFs 48, 36. The Court highlights the most pertinent facts below.

Hip927 is a male thoroughbred horse with a well-esteemed lineage, *see* ECF 1 ¶ 70, and an estimated monetary value of $105,000, *id.* ¶ 71.  In October 2022, DeBellis (a resident of California) sent Hip927 to Fabian Garcia, an independent contractor in Florida, to prepare the horse to be entered in a Florida auction hosted by Ocala Breeder's Sales Company, Inc. ("OBS"), a business entity with its principal place of business in Florida. *Id.* ¶¶ 1, 4–5, 23. Garcia entered Hip927 into the auction on April 22, 2022, under Garcia's name. *Id.* ¶ 29. DeBellis alleges that Garcia thereafter privately sold Hip927 to Seymour Bennett (a Florida resident), who was acting as an agent for Joseph Woodit (a Maryland resident). *Id.* ¶¶ 2–3, 51–52, 55.  Woodit transported Hip927 to Maryland, and as of the filing of the Complaint, Hip927 was stabled at the Laurel Park Racetrack in Anne Arundel County. *Id.* ¶ 19.

At the time of filing, DeBellis asserted that Maryland was a proper venue because Maryland was the last known location of Hip927, the subject of this action.   ECF 41 ¶ 21; 28

---

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which . . . a substantial part of the property that is subject of the action is situated . . . .").

Thereafter, Woodit filed an affidavit indicating that on December 29, 2023, Woodit sold Hip927 for $2,500. ECF 40-3 ¶ 4. Hip927 is no longer in Woodit's possession. *Id.* ¶ 5. Woodit paid a broker $1,000 "to find a good home for" Hip927. *Id.* ¶ 5. To the best of Woodit's knowledge the horse is "in the care and custody of his new owner," *id.* ¶ 6, however, Woodit does not indicate the identity of the new owner or the location of Hip927, *see id.*

The Court ruled on Woodit's motion to dismiss on March 14, 2024, ECFs 36, 27, and permitted DeBellis leave to amend his complaint. *See* ECF 41 (Amended Complaint).  The Court also ruled on OBS' motion to dismiss for lack of personal jurisdiction, ECF 14, and found the Court lacked personal jurisdiction over OBS.  ECF 48, 49.  Bennett's pro se motion to dismiss, ECF 24, was also denied, and Garcia's entry of default was vacated. *See* ECF 38, 39. Presently pending before the Court are Woodit's Second Motion to Dismiss, ECF 50, Garcia's Motion to Dismiss for Lack of Jurisdiction, ECF 43, DeBellis' Motion for Establishment of a Constructive Trust, ECF 31, as well as DeBellis' more recent Motion seeking Transfer of Venue. ECF 61.

## II.   LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). This provision "was intended to enlarge the common law power of the court under the well-established doctrine of *forum non conveniens* and was enacted to prevent the waste of time, energy and money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Lynch v. Vanderhoef*

*Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (quoting *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994)); *see also Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955)).

In a motion pursuant to § 1404(a), the burden is on the moving party to show that transfer to another forum is proper. *Lynch*, 237 F. Supp. 2d at 617 (citing *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992)). To that end "[i]n reviewing a motion to transfer, [the] [c]ourt may consider evidence outside the pleadings." *Menk v. MITRE Corp.*, Civ. No. 23-00053-JRR, 2024 WL 327087, at *4 (D. Md. Jan. 29, 2024) (alteration in original) (quoting *Siemens Energy, Inc. v. CSX Transp., Inc.*, No. RDB-15-1072, 2016 WL 1059261, at *2 n.2 (D. Md. Mar. 17, 2016)); *Ancient Sun Nutrition, Inc. v. Or. Algae, LLC*, Civ. No. 10-140, 2010 WL 3719503, at *1 (W.D.N.C. Sept. 17, 2010) ("Unlike a Rule 12(b) motion, which is limited to facts contained in the Complaint, a motion to transfer allows for review of materials submitted outside the pleadings"). Ultimately, "the decision whether to transfer is committed to the sound discretion of the district court." *Lynch*, 237 F. Supp. 2d at 617 (citing *Dicken*, 862 F. Supp. at 92).

## III.   DISCUSSION

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). Thus, the Court first addresses the threshold issue of whether venue would have been proper had the case been filed in the Middle District of Florida, and then balances the factors outlined in § 1404(a).

4

A.    **Venue Would Have Been Proper in the Middle District of Florida.**

As a threshold issue, the Court must first decide whether venue would have been proper in the Middle District of Florida. *See* 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division where it might have been brought. . . .") (emphasis added). "Whether a specific venue is appropriate is a procedural matter." *Chick v. Johnson*, Civ. No. 18-00814-JMC, 2018 WL 5118499, at \*4 (D.S.C. Oct. 19, 2018) (citing *Albemarle Corp. v. AstraZenca UK Ltd.*, 628 F.3d 643, 649 (4th Cir. 2010)).   Generally, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ." 28 U.S.C. § 1391(b)(2).

In this case, the disputed sale of Hip927 occurred in Ocala, Florida. *See* ECF 41 ¶¶ 5, 30–33.  Thus, the events giving rise to the claim occurred in Florida, and venue would have been permissible in the Middle District of Florida. *See* 28 U.S.C. §§ 1391(b)(2), 1404(a); *see also Ocala*, U.S. Dist. Ct. Middle Dist. of Fla., https://www.flmd.uscourts.gov/locations/ocala (last visited July 18, 2024).

B.    **The Factors Either Weigh in Favor of Transfer or Weigh Neutrally in the Transfer Analysis.**

In deciding whether a motion to transfer should be granted, courts are to consider the following: (1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice. *Lynch*, 237 F. Supp. 2d at 617 (citing *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256–62 (E.D. Va. 1988)); *Menk*, 2024 WL 327087, at \*4.   As explained below, these factors either weigh in favor of transfer or weigh neutrally in the transfer analysis.

1.  Plaintiff's Choice of Venue is Entitled to Little Deference in this Case.

"Although a plaintiff's choice of forum is ordinarily accorded considerable weight, that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Lynch*, 237 F. Supp. 2d at 617 (citing *Dicken*, 862 F. Supp. at 92–93).  As noted by previous order of the Court, this is a case in which a non-resident of Maryland sued numerous non-residents of Maryland only because the disputed property happened to be purchased by a Maryland resident and transported to Maryland.  *DeBellis v. Woodit*, No. CV 23-1009-BAH, 2024 WL 1417428, at *8 (D. Md. Apr. 1, 2024) ("This case presents a non-resident plaintiff (of California) suing a non-resident corporation (of Florida) in tort based upon the non-resident plaintiff's claims that defendant should not have allowed a horse to be sold or to leave the non-resident defendant's property in Florida.").

In this case, the conduct complained of (an unauthorized sale of a horse) occurred in Florida, not Maryland—the forum selected by the plaintiff—and Maryland has no connection with the matter in controversy. *Lynch*, 237 F. Supp. 2d at 617.  The disputed horse sale occurred in Florida, ECF 41 ¶¶ 5, 30–33, any fraudulent representation of Garcia's authority to sell Hip927 to Woodit's agent, Bennett, occurred in Florida, *id.* ¶ 5, 32, and OBS' decision to release the ownership papers to Woodit was made in Florida, *id.* ¶ 66.

The conclusion that the dispute has no connection with the matter in controversy is even more true now when Hip927's location is unknown.  As this Court indicated by prior opinion, it is "no longer clear whether Hip927 is in Maryland." *DeBellis*, 2024 WL 1417428, at *2 n.5.  On March 20, 2024, in connection to another motion, Defendant Woodit indicated by affidavit that Hip927 was sold on December 29, 2023, and that the horse is no longer in his possession.  ECF

6

40-3, at 1.  Hip927's subsequent sale and transfer suggests that the reason for Plaintiff's initial

selection of Maryland as the forum (as the state in which the property was located), may not even

exist any longer.

Therefore, while the Court recognizes the general rule that a Plaintiff's selection of a

forum is afforded considerable weight, that general rule does not apply in a situation such as this

where the basis for the Plaintiff's selection of Maryland as the venue (*i.e.*, that Hip927 was

stabled in Maryland) is now entirely speculative, *see* ECF 40-3, at 1 (indicating Woodit paid a

broker to "find a good home" for the horse and to the best of his knowledge the horse is "in the

care and custody of his new owner"), and all substantive events at issue in the underlying

controversy took place in Florida.  Therefore, "while Plaintiff's choice of Maryland as a forum is

entitled to some deference, that deference is limited." *Lynch*, 237 F. Supp. 2d at 617.

2.   The Convenience to Witnesses Factor Weighs Neutrally.

First, as Plaintiff notes, the alleged unauthorized sale took place in Ocala, Florida.  ECF

41, 5, 30–33.  DeBellis argues that "access to witnesses about the manner of the sale and the

conduct of the parties prior thereto and in connection herewith would presumably be in the same

district and general location" of the sale.  ECF 61, at 5.  To the extent witnesses to the

transaction, such as employees of OBS, exist, logic suggests that such witnesses would

presumably be in Florida.  However, "[w]hen using this factor to influence a transfer of venue,

the movant must identify the prospective witnesses and specifically describe their proposed

testimony." *Coors Brewing Co. v. Oak Beverage, Inc.*, 549 F. Supp. 2d 764, 772 (E.D. Va.

2008).  DeBellis has not provided such specific identification, *see* ECF 61, and so this factor, is

neutral, neither weighing in favor nor against transfer.

3. <u>The Convenience to the Parties Factor Weighs in Favor of Transfer.</u>

DeBellis argues that the Middle District of Florida would be the most convenient venue for most of the parties, as Garcia, OBS, and Bennett all reside in Florida. ECF 61-1, at 5 ("while neither forum is wholly convenient for all parties, in hindsight and in light of the Court's ruling on the jurisdictional issues raised by OBS and now Defendant Garcia, the venue of greatest convenience would appear to be the Middle District of Florida"). The only party for whom a change of venue would be less convenient is Woodit, who resides in Maryland. *See* ECF 62, at 4 (arguing "[i]t is not convenient for Plaintiff nor Defendant Woodit to have to travel to Florida").[4]

The Court acknowledges that transfer would create added inconvenience to Woodit, who would have to seek new counsel in Florida, as his counsel is not barred in Florida.[5] *See* ECF 62, at 4. Garcia would face the same inconvenience, though Garcia does not oppose the transfer. *See* ECF 3–4 (requesting the Court afford Garcia sixty (60) days from the date of transfer to secure new counsel). Nevertheless, DeBellis is correct that the majority of the identified parties to the dispute are residents of Florida. *See* ECF 41 ¶¶ 1–5.

Woodit also argues that a change of venue would affect the substantive law applied. ECF 62, at 4 ¶ 6. However, caselaw is clear that "the transferee district court . . . [is] obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Grayson v. Bouligny Co.*, No.

---

[4] DeBellis, a resident of California, ECF 41 ¶ 1, must travel to either forum whether it be Maryland and Florida, and the Court can hardly say the difference in travel times creates an added layer of inconvenience to DeBellis.

[5] DeBellis proffers that Woodit was present in Florida during the disputed transaction, and so Woodit should have been on notice of the possibility of being hailed to Florida. *See* ECF 61-1, at 2 n.1. Woodit disputes that he was ever present for the sale. ECF 62, at 5 ¶ 13; ECF 62-1, ¶ 6 (affirming the last time he was in Florida was for a five-day vacation in 2009).

87-3763, 1988 WL 131804, at *2 (4th Cir. Dec. 5, 1988) ("[A] federal diversity action is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court must apply the substantive law of the state in which the transferor court sits."). Thus, the Court rejects the argument that Woodit or other parties would in some way be prejudiced via transfer based on a change in the applicable substantive law.

4.   The Interest of Justice Factor Weighs in Favor of Transfer.

The strongest factor weighing in favor of transfer is the Court's interest in the just and speedy disposition of the issues. It is the interest of justice for all parties that were subject to the suit to be joined. *Costaras v. NBC Universal, Inc.*, 409 F. Supp. 2d 897, 907–08 (N.D. Ohio 2005) ("The interests of justice would be served by transferring the entire case to a district where all parties may be joined in one suit rather than in severing the claims."); *Flatt v. Aspen Dental Mgmt., Inc.*, Civ. No. 18-1278, 2019 WL 6044159, at *8 (S.D. Ohio Nov. 15, 2019) (finding the interest of justice weighed in favor of transfer when the court found it lacked personal jurisdiction over one of the defendants); *Leesona Corp. v. Cotwool Mfg. Corp., Judson Mills Div.*, 204 F. Supp. 139, 140–41 (W.D.S.C. 1962) (citing *Clayton v. Swift & Co.*, 137 F. Supp. 219 (W.D.N.C. 1956), which held "a more convenient trial of the issues can be had and all parties and witnesses more nearly convenienced and the interest of justice better served, by transferring the cause").

In this case, DeBellis acknowledges that Garcia's contacts with Maryland are even less than OBS, ECF 61-1, at 3, and the Court by prior order found it lacked personal jurisdiction over OBS. ECFs 48, 49. Were the Court to proceed in this litigation, DeBellis would need to file a separate suit in Florida in order to vindicate his alleged rights against OBS and, based on

9

DeBellis' concession, against Garcia. It is uneconomical and inexpedient for DeBellis to maintain the same action relating to the same dispute in two forums.

The decision to transfer is committed to the sound discretion of the trial court. *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 (D. Md. 1998) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257 (1981)). At bottom, this is a case about a horse sale in Florida, between a California resident, two Florida agents, a Florida corporation, and one Maryland resident who temporarily owned the disputed horse. It would be more convenient to the majority of identified parties to litigate this dispute in Florida. It is the interest of justice for all parties to the underlying transaction to be joined in one suit, and not separated amongst individual jurisdictions in identical suits. Therefore, given that the Court dismissed OBS for lack of jurisdiction, ECFs 48, 49, and DeBellis contends Garcia's contacts are even less established with Maryland, ECF 61-1, at 3, it is in the interest of justice for the case in its entirety to be transferred so DeBellis may resolve his dispute with all parties to the transaction in one fell swoop. The Court is persuaded that the balance of factors militates in favor of a change of venue, particularly when the horse could be anywhere in the United States, or beyond, and the reason supporting Maryland's venue in the first place (Hip927) is, apparently, at large.

## II.   **CONCLUSION**

In conclusion, Plaintiff's Motion is **GRANTED**. An implementing order follows.


Dated: <u>July 19, 2024</u>

                                                              /s/
                                                    Brendan A. Hurson
                                                    United States District Judge

10